NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.



SUPREME COURT OF GEORGIA
Case No. S24C0347

April 30, 2024

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

CITY OF ATLANTA v. 400 EDGEWOOD, LLC.

The Supreme Court today denied the petition for certiorari in this case.

*All the Justices concur.*

Court of Appeals Case No. A23A0903

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

, Clerk

MCMILLIAN, J., concurring in the denial of certiorari.

This case turns on whether it is within the jurisdiction of a municipal court to order the owner of a gas station and convenience store to make various changes to its security and operations, after the City of Atlanta asked that court to abate an alleged public nuisance on the owner's property. I concur with the denial of certiorari because I agree that the municipal court could not order the measures that it did, but for different reasons not discussed by the Court of Appeals. See *400 Edgewood, LLC v. City of Atlanta*, 369 Ga. App. 673, 674 (893 SE2d 156) (2023).

The factual and procedural background as laid out by the Court of Appeals is as follows:

> 400 Edgewood, LLC ("Edgewood"), owns a gas station and convenience store located at 400 Edgewood Avenue ("the Property") in downtown Atlanta. After numerous criminal incidents occurred on or near the Property, the City of Atlanta ("the City") filed a complaint *in rem* to abate an alleged public nuisance at the Property pursuant to OCGA § 41-2-1 et seq., and the Atlanta Municipal Code Art. 1 §§ 19 and 25. Specifically, the City alleged that "it is the duty of the owners and occupants of any premises to maintain [the] property in a state of good repair and in conformance with State and local law and

clear of any public or attractive nuisance." The City alleged that the owner/occupiers of the Property "failed to discharge these duties" and that the "criminal and unlawful activity occurring at the subject Property" constituted a public nuisance. The City requested that the municipal court "close and immediately secure the Property so that it cannot be used in connection with the commission of illegal activity."

After a hearing, the municipal court judge entered an order finding that "the evidence presented was insufficient to support a finding that the Property itself created a public nuisance[.]" . . . However, the municipal court also found that "the evidence support[ed] a finding that *the operation of the business* at the Property [was] a nuisance." (Emphasis supplied.) The municipal court then ordered Edgewood to install additional security cameras, hire "competent security," and reduce the hours of operation of the gas station and convenience store for one year.

Edgewood filed a petition for certiorari review in the superior court, which affirmed the municipal court's order. [The Court of Appeals] granted Edgewood's application for discretionary appeal[.]

Id. at 673-74 (citation and punctuation omitted). The Court of Appeals reversed, concluding that the municipal court impermissibly entered injunctive relief by "impos[ing] an affirmative duty on Edgewood to both perform (by enhancing security measures) and refrain from performing (by limiting the

2

business's hours of operation) specific acts." Id. at 674 (citing *Adams v. Madison County Planning & Zoning*, 271 Ga. App. 333, 334 (1) (609 SE2d 681) (2005) ("[I]njunctions are within the exclusive jurisdiction of the superior and appellate courts.")). Having so concluded, the Court of Appeals found it unnecessary to consider whether "the municipal court exceeded its *in rem* authority under OCGA § 41-2-1 et seq." Id. n.5.

It is difficult to see, however, how the Court of Appeals could conclude that the municipal court acted beyond its jurisdiction in purportedly abating the nuisance, without grappling with OCGA § 41-2-5. OCGA § 41-2-5 provides: "If the existence of a nuisance is complained of in a county or city of this state, the *municipal court of the city*, if the nuisance complained of is in the city, *shall have jurisdiction* to hear and determine the question of the existence of such nuisance and, if found to exist, *to order its abatement*." (emphasis added). We have long held that under OCGA § 41-2-5 and its predecessors, a municipal court has the power to abate nuisances. See *Horne v. City of Cordele*, 254 Ga. 346, 348 (2) (329 SE2d 134)

3

(1985) (acknowledging a recorder court's "power to abate nuisances pursuant to the legislative authorization in OCGA § 41-2-5"); *City of Atlanta v. Wolcott*, 240 Ga. 244, 244 (240 SE2d 83) (1977) (stating that OCGA § 41-2-5's materially similar predecessor "provides that the police court of such city shall have jurisdiction to . . . order [a nuisance's] abatement"); *Yield, Inc. v. City of Atlanta*, 239 Ga. 578, 579 (238 SE2d 351) (1977) ("Appellee . . . proceeded under [OCGA § 41-2-5's materially similar predecessor] which *authorizes a municipal court* to determine the existence of and *abate nuisances*" (emphasis added)).

The question then is whether the municipal court, in ordering the relief it did, acted within its authority under OCGA § 41-2-5 to order a nuisance be abated.[1] *Wolcott* answers this question. See 240

---

[1] The other question, which the parties do not raise before us and I do not answer, is whether OCGA § 41-2-5 violates Article VI, Section I, Paragraph IV ("Par. IV") of the 1983 Georgia Constitution, which provides that "only the superior and appellate courts and state-wide business court shall have the power to issue process in the nature of . . . injunction." This constitutional question hinges on whether a nuisance-abatement order is inherently an injunction. In raising this issue, I note that Paragraph I of Art. VI, Sec. I of the 1983 Georgia Constitution, which provides that "[m]unicipal courts shall have jurisdiction over ordinance violations and such other jurisdiction as provided by law," may also bear on whether OCGA § 41-2-5 is constitutional.

4

Ga. at 244-45. In *Wolcott*, property owners alleged that they were harmed by the continued use of an adjacent recreational park maintained by the City of Atlanta and filed an action in superior court seeking nuisance abatement. See id. at 244. The superior court ordered the City to "submit a plan for abatement" of a nuisance, and the City appealed, arguing that under Ga. Code Ann. § 72-401 (a materially similar predecessor to OCGA § 41-2-5), the superior court lacked original jurisdiction over a nuisance abatement action because a city "police court" was the proper forum under § 72-401. See id. We disagreed, reasoning that § 72-401 did not provide "a complete and adequate remedy at law," because the nuisance complained of "did not result from the existence of a nuisance per se but from the continuing overuse of the park by members of the public, absent controls." Id. at 244-45. The relief ordered was that the City "develop a plan to control the public use of the park," rather than "the removal of the recreational facilities as is contemplated by [ ] § 72-401." Id. at 245. Because the relief ordered "would have been beyond the power of the municipal court of Atlanta," "jurisdiction

5

was properly maintained in the Superior Court." Id. at 244-45 (referencing Ga. Const. of 1976, Art. VI, Sec. IV, Par. I ("The Superior Courts shall have exclusive jurisdiction in . . . equity cases.")).

*Wolcott* supports that the relief granted in this case is also "beyond the power of the municipal court." 240 Ga. at 245. Here, the City of Atlanta originally filed a complaint *in rem* to abate an alleged public nuisance on the owner's property, requesting the municipal court to "'close and immediately secure the Property so that it cannot be used in connection with the commission of illegal activity.'" *400 Edgewood, LLC*, 369 Ga. App. at 673. But while the municipal court found "the operation of the business at the Property" to be a nuisance, it did not find that the "Property itself created a public nuisance." Id. at 673-74 (emphasis omitted). At this point then, the municipal court should have denied the City's *in rem* abatement action. Instead, the court ordered the property owner "to install additional security cameras, hire 'competent security,' and reduce the hours of operation of the gas station and convenience store for

6

one year." Id. at 674. Ordering these changes to how the owner controlled and operated its business on the property—rather than ordering the property itself be closed—was injunctive relief beyond the municipal court's authority under OCGA § 41-2-5 to order a nuisance abated. See *Wolcott*, 240 Ga. at 244 (while ordering the removal of a park's recreational facilities was relief "contemplated" by OCGA § 41-2-5's predecessor, ordering the City to "develop *a plan to control* the public use of the park" was equitable relief beyond municipal court's jurisdiction (emphasis added)).

For these reasons, I agree that the Court of Appeals reached the right result, but caution that the Court of Appeals's opinion should not be read as prohibiting a municipal court from abating a nuisance altogether, given a municipal court's explicit authority to do so under OCGA § 41-2-5.[2]

---

[2] A party seeking to abate a nuisance may consider filing such an action in a superior court that has the jurisdiction to impose injunctive relief, should the nuisance-abatement action be denied.